UNITED STATES DISTRICT COURT
U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN DISTRICT - WI
MILWAUKEE DIVISION
FILED

2026 JUN 12 P 4: 04

CLERK OF COURT

CARRIE MAY PONIEWAZ
3224 N SHEPARD AVE
MILWAUKEE, WI 53211,

        Plaintiff,

-v.-

Case No. **26-C 1063**

ZYWAVE, INC.
10100 W. INNOVATION DRIVE, SUITE 300
MILWAUKEE, WI 53226,

        Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Carrie May Poniewaz, appearing pro se, alleges as follows:

## I. NATURE OF THE ACTION

1.     This is an employment discrimination and retaliation action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA").

2.     Plaintiff was a long-term Legal Content Attorney for Zywave. From her hire in May 2015 until September 2023, she met and exceeded the legitimate expectations of her position, received positive feedback, and was not warned that her performance was deficient.

3.     In September 2023, Zywave eliminated the Legal Content Team and moved Plaintiff into a materially inferior role under a younger, less experienced supervisor and under less favorable terms and conditions of employment. Although Zywave later claimed

1

Plaintiff kept the same title and pay, the reassignment materially harmed her job duties, status, reporting structure, autonomy, opportunities, workload, and working conditions.

4. After Plaintiff requested disability-related accommodations on November 28, 2023 and December 5, 2023, Zywave did not engage in a good-faith interactive process or provide effective accommodations. Instead, Zywave began retroactively reviewing Plaintiff's prior work, manufactured and exaggerated alleged performance deficiencies, imposed a negative rating and Performance Improvement Plan ("PIP"), subjected her to heightened scrutiny and discipline, and ultimately terminated her employment.

5. Zywave's stated reasons for its actions are false, inconsistent, selectively enforced, and pretextual. The timing, shifting explanations, comparator evidence, prior positive performance history, and Zywave's reliance on demonstrably false assertions support a reasonable inference that Zywave discriminated against Plaintiff because of age and disability, failed to accommodate her disability, and retaliated against her for requesting accommodations and opposing unlawful conduct.

6. Plaintiff seeks all relief available under the ADEA and ADA, including back pay, reinstatement or front pay, liquidated damages under the ADEA, compensatory damages under the ADA, punitive damages under the ADA, attorney's fees and costs to the extent permitted by law, pre- and post-judgment interest, equitable relief, and any other relief the Court deems just and proper.

2

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the ADEA and ADA.

8. This Court has jurisdiction under 29 U.S.C. § 626(c) and 42 U.S.C. § 12117(a).

9. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), incorporated by the ADA, because Defendant is headquartered in Wisconsin, Plaintiff worked for Defendant in Wisconsin and reported to Wisconsin-based management, relevant employment decisions were made or implemented in this District, and the unlawful employment practices occurred in this District.

10. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 443-2024-01947.

11. The EEOC issued Plaintiff a Notice of Right to Sue on March 17, 2026. A copy of that Notice of Right to Sue is attached to this Complaint as Exhibit A.

12. This Complaint is filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

13. Plaintiff has satisfied all conditions precedent to bringing this action, or such conditions have been waived, excused, or fulfilled.

## III. PARTIES

14. Plaintiff Carrie May Poniewaz is an individual residing in Milwaukee County, Wisconsin.

15. Plaintiff was born in 1977 and was over the age of 40 at all relevant times.

16. Plaintiff is a qualified individual with disabilities within the meaning of the ADA.

3

17. Plaintiff has diagnosed medical conditions that substantially limit one or more major life activities, including but not limited to concentration, focus, sleep, cognitive functioning, and/or the need for medical appointments and procedures. Plaintiff's disabilities include Attention Deficit Hyperactivity Disorder (ADHD) and medical conditions associated with elevated cancer risk and related procedures.

18. Defendant Zywave, Inc. is a corporation headquartered in Wisconsin.

19. At all relevant times, Defendant employed the number of employees required for coverage under the ADEA and ADA.

20. At all relevant times, Defendant was Plaintiff's employer within the meaning of the ADEA and ADA.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's successful employment before September 2023

21. Zywave hired Plaintiff as a Legal Content Attorney on or about May 18, 2015.

22. Plaintiff's work involved researching, analyzing, drafting, and updating legal content regarding employment laws and related compliance topics for Zywave's products and customers.

23. Plaintiff held legal expertise and institutional knowledge developed over approximately eight years of service.

24. Before September 2023, Plaintiff reported to the manager of Zywave's Legal Content Team, who was an attorney.

25. Before September 2023, Plaintiff's duties included legal research and writing, exercising independent legal judgment regarding legal developments, managing deadlines based on legal significance and customer needs, answering Benefit

Document Builder legal support questions, and performing subject-matter expert ("SME") review of other employees' work.

26. Before September 2023, Plaintiff received positive reviews and feedback.

27. Zywave did not document or communicate to Plaintiff any performance deficiencies before December 28, 2023.

28. In Plaintiff's performance review covering January 1, 2023 through March 31, 2023, Plaintiff was rated as sometimes exceeding expectations, which was the second highest rating possible among five options, and her contributions were described as critical to the team's success.

29. Zywave did not provide Plaintiff with a negative review for the second quarter of 2023.

30. In October 2023, after the September 2023 reorganization, Plaintiff was still rated as meeting expectations for the third quarter of 2023.

31. Plaintiff also received positive contemporaneous feedback after the reorganization, including praise for her work, comments that her work looked good, and acknowledgment that she had done a great job on certain projects.

32. Zywave's later claim that Plaintiff had longstanding poor performance is contradicted by the absence of contemporaneous discipline, the positive reviews, and Zywave's own favorable feedback.

**B. Plaintiff's disabilities and prior accommodations**

33. Before September 2023, Zywave was aware that Plaintiff had limitations associated with disabilities.

34. Plaintiff had discussed disability-related limitations with her prior manager, including limitations associated with ADHD.

35. Plaintiff's prior manager provided effective informal accommodations through an ongoing interactive process.

36. These informal accommodations included schedule flexibility, flexibility regarding optimal work times, and working conditions that allowed Plaintiff to perform the essential functions of her job successfully.

37. Plaintiff was able to perform the essential functions of her position with reasonable accommodations.

38. Zywave's later assertion that it lacked notice of Plaintiff's disability is contradicted by Plaintiff's prior disclosures, prior accommodations, and later medical documentation.

## C. September 2023 reorganization and age-based demotion/reassignment

39. In or around September 2023, Zywave reorganized its content department.

40. Zywave eliminated the separate Legal Content Team.

41. Zywave reassigned Plaintiff from the Legal Content Team to what was effectively a lower-level position on the regular content team.

42. After the reorganization, Plaintiff reported to Brendan Zyvoloski, who was under age 40.

43. Mr. Zyvoloski was younger than Plaintiff and had less legal experience than Plaintiff.

44. Plaintiff was moved down a level in the reporting structure beneath Patrick Noonan because she was placed under Mr. Zyvoloski, who had reported through a chain that included younger employees.

6

45. Younger employees, including employees under age 40, were promoted or moved into more desirable roles with greater control, authority, autonomy, and opportunities.

46. Younger employees were also given control over Plaintiff's work, including the ability to assign work, review her drafts, impose deadlines, or affect the evaluation of her performance.

47. Plaintiff's job title and pay did not change immediately after the reorganization, but her terms and conditions of employment materially worsened.

48. Plaintiff lost desirable duties, including SME-review duties and responsibility for Benefit Document Builder legal support questions.

49. Plaintiff lost autonomy and the ability to exercise independent legal judgment regarding priorities, deadlines, and workload.

50. Plaintiff was assigned lower-level, tedious, less desirable, and more voluminous work.

51. Plaintiff was subjected to new, confusing, unwritten, and inconsistently communicated workflows.

52. Plaintiff was required to work under deadlines and expectations that were not clearly communicated and that differed from the standards applied to younger similarly situated employees.

53. Plaintiff's work became subject to heightened scrutiny by younger and less experienced employees.

54. Plaintiff's workload became disproportionately large compared to similarly situated younger employees.

7

55. Plaintiff was treated less favorably than similarly situated younger employees, including with respect to workload, scrutiny, deadlines, autonomy, review standards, and discipline.

56. Zywave later claimed Plaintiff was not demoted because her title and pay stayed the same. That claim ignores the actual changes to Plaintiff's job duties, reporting structure, autonomy, prestige, workload, review process, advancement opportunities, and working conditions.

57. Under current law, a plaintiff challenging a discriminatory transfer or reassignment need not show a reduction in pay or title; she must show some harm respecting an identifiable term or condition of employment. *See Muldrow v. City of St. Louis*, 601 U.S. 346 (2024); *see also Arnold v. United Airlines, Inc.*, 142 F.4th 460 (7th Cir. 2025) (applying the "some harm" framework in the ADEA context).

58. Plaintiff suffered such harm.

**D. Plaintiff's November and December 2023 accommodation requests**

59. On or about November 28, 2023, Plaintiff informed Mr. Zyvoloski that she had recently been diagnosed with an elevated risk of breast cancer and would need medical procedures and related time off.

60. Plaintiff also informed Mr. Zyvoloski that these medical issues exacerbated cognitive limitations associated with ADHD, including difficulty concentrating and sleeping.

61. Plaintiff requested flexibility to take PTO or time away for medical procedures, including procedures that might occur with little advance notice.

8

62. Plaintiff requested flexibility with deadlines and workload because medical appointments, procedures, symptoms, and disability-related limitations affected her ability to meet rigid and newly imposed deadlines.

63. Mr. Zyvoloski responded that this was "OK" and told Plaintiff to let him know if she needed support.

64. On or about December 5, 2023, Plaintiff again communicated her need for disability-related flexibility during a team meeting.

65. Plaintiff again requested flexibility because of her own medical conditions.

66. Plaintiff also disclosed that a family member had recently suffered a stroke and that Plaintiff and her immediate family were involved in care responsibilities.

67. Plaintiff's November 28 and December 5 communications were sufficient to put Zywave on notice that Plaintiff was requesting reasonable accommodation for disability-related limitations.

68. A request for accommodation does not require magic words. The ADA requires an employer to engage in an interactive process once the employer knows of the disability and the employee's desire for accommodation. *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281 (7th Cir. 1996); *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005).

69. Zywave did not engage in a good-faith interactive process after Plaintiff's November 28 or December 5 requests.

70. Zywave did not request clarification, seek medical documentation at that time, identify essential job functions, evaluate reasonable accommodations, or propose effective alternative accommodations.

71. Instead, Zywave continued enforcing rigid and newly imposed deadlines and expectations.

72. Zywave later falsely asserted that Plaintiff merely asked for time off for a family emergency and did not request accommodation for her own disabilities. That assertion is false and pretextual.

**E. Zywave's retaliatory December 28, 2023 email and retroactive performance review**

73. Shortly after Plaintiff's November and December 2023 accommodation requests, Zywave initiated or escalated a retroactive review of Plaintiff's 2023 work.

74. On December 28, 2023, Mr. Zyvoloski emailed Plaintiff stating that a recent review had identified alleged performance issues.

75. The December 28 email stated that Plaintiff would receive a "2" rating on her next quarterly review and would be placed on a PIP starting in January 2024.

76. At the time of the December 28 email, the quarter at issue had not yet ended.

77. The December 28 email indicated that the PIP would be difficult to overcome.

78. Before December 28, 2023, Zywave had not warned Plaintiff that her performance was deficient.

79. Before December 28, 2023, Zywave had not disciplined Plaintiff for the alleged deficiencies that it later cited.

80. The timing of the December 28 email, shortly after Plaintiff's accommodation requests, supports an inference of retaliation.

81. Zywave's retroactive review was not a neutral performance assessment. It was initiated or used to manufacture a justification for adverse action after Plaintiff requested accommodations.

82. Zywave's reliance on alleged performance deficiencies from periods already rated satisfactory or better supports an inference of pretext.

83. Plaintiff's positive performance history and the absence of contemporaneous discipline support an inference that Zywave's stated performance concerns were not honestly held.

84. Evidence that an employer's stated reasons are false or inconsistent may support an inference of discrimination or retaliation. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *Murphy v. Caterpillar Inc.*, 140 F.4th 900 (7th Cir. 2025).

**F. Plaintiff's protected objections beginning January 1, 2024**

85. On or about January 1, 2024, Plaintiff objected to Zywave's discriminatory and retaliatory conduct.

86. Plaintiff denied Zywave's allegations about her performance.

87. Plaintiff objected that Zywave had demoted her, changed her job duties and working conditions, failed to accommodate her disabilities, and retaliated against her for requesting accommodations.

88. Plaintiff's January 1, 2024 objections were protected activity under the ADEA and ADA.

89. Plaintiff continued to request accommodations and oppose discrimination and retaliation in 2024.

90. Zywave's retaliatory conduct escalated after Plaintiff's January 1 protected activity.

91. Zywave placed Plaintiff under Mr. Noonan's direct supervision.

92. Mr. Noonan defended Zywave's actions, argued with Plaintiff about her discrimination and accommodation concerns, and began compiling additional criticisms of Plaintiff's work.

93. Mr. Noonan also informed Plaintiff that the PIP referenced in Mr. Zyvoloski's December 28 email had not been authorized and did not actually apply. This undermines Zywave's later claim that the December 28 PIP threat reflected a legitimate and established performance process.

94. Zywave continued searching past records and current work for items it could characterize as deficiencies.

95. Zywave ignored or rejected Plaintiff's explanations and evidence showing that Zywave's allegations were false, exaggerated, or based on changed expectations that had not been communicated.

## G. Zywave's false and pretextual performance accusations

96. Zywave falsely claimed that Plaintiff failed to timely cover the EEOC's January 24, 2023 guidance on hearing disabilities.

97. In reality, Plaintiff drafted and submitted a Legal Update regarding that guidance on January 24, 2023, the same day the guidance was issued.

98. Zywave's later accusation confused or conflated a Legal Update with a later supplemental Compliance Bulletin, even though those were different document types with different workflows.

99. Zywave falsely claimed Plaintiff did not submit a Sample Violent Incident Log for SME review.

100. In reality, Plaintiff did submit the document for SME review, and it was reviewed and approved by management.

101. Zywave falsely characterized a user suggestion or request for an added detail as a rare complaint and legal error attributable to Plaintiff.

102. Zywave did not treat similar or more serious issues in other employees' work the same way.

103. Zywave imposed a harsher "perfectly publication-ready" standard on Plaintiff while admitting elsewhere that drafts were expected to be "near publication-ready" and that SME review existed to catch issues.

104. Zywave imposed an unreasonable and selectively enforced 24-hour publication standard on Plaintiff.

105. Zywave's stated 24-hour rule was inconsistent. At times Zywave described the rule as requiring legal content attorneys to move federal updates forward within 24 hours after SME feedback, while at other times it treated Plaintiff as if she alone had to publish fully completed content within 24 hours of the legal development itself, including time outside her control for SME and copy-edit review.

106. Zywave did not impose the same strict standards on similarly situated younger employees, employees without disabilities, or employees who had not requested accommodation or opposed discrimination.

107. Zywave falsely accused Plaintiff of "time theft" based on PTO entries and calendar records.

108. Plaintiff was a salaried employee who often worked more than 40 hours per week, including evenings, late nights, and early mornings.

109. Plaintiff remained available during core hours and attended required meetings.

110. Plaintiff's prior working arrangement allowed flexibility regarding when work was performed.

111. Zywave's PTO accusations were part of its effort to create retroactive justification for adverse action after Plaintiff engaged in protected activity.

112. Zywave's performance accusations were false, exaggerated, selectively enforced, and inconsistent with contemporaneous evidence.

**H. March 2024 review, PIP, final warning, and ineffective accommodation response**

113. On or about March 5, 2024, Zywave issued Plaintiff a negative Q4 2023 performance review.

114. The March 5 review included false, misleading, exaggerated, and unfair assertions.

115. On or about March 13, 2024, Zywave issued Plaintiff a 30-day PIP.

116. The PIP imposed unreasonable requirements, heightened scrutiny, and standards that had not been applied to similarly situated employees.

117. The PIP was disciplinary and placed Plaintiff's employment in jeopardy.

118. Zywave's own policies described a PIP as part of progressive discipline.

119. The PIP materially changed Plaintiff's working conditions and would dissuade a reasonable employee from requesting accommodations or opposing discrimination.

120. Zywave later claimed a PIP is not actionable as a matter of law. That defense fails because retaliation claims use a materially adverse standard and because a PIP or performance plan may be actionable when it imposes adverse employment

14

conditions, is implemented in a way that sets the employee up to fail, threatens termination, forms part of a retaliatory sequence, or causes concrete harm. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006); *Arnold v. United Airlines, Inc.,* 142 F.4th 460 (7th Cir. 2025); *Murphy v. Caterpillar Inc.,* 140 F.4th 900 (7th Cir. 2025).

121. After receiving the PIP, Plaintiff attempted to understand how to satisfy Zywave's expectations, including by seeking guidance from an SME reviewer.

122. Zywave falsely characterized Plaintiff's request for guidance as an attempt to cheat or subvert the PIP.

123. On or about March 14 or 15, 2024, Zywave issued Plaintiff a final warning.

124. The final warning was based on false and retaliatory characterizations of Plaintiff's communication with a coworker.

125. During this time, Zywave also questioned Plaintiff about her communications with coworkers regarding working conditions and the PIP.

126. Zywave's conduct interfered with Plaintiff's efforts to understand expectations, defend herself, and discuss working conditions.

127. Plaintiff provided medical certification in March 2024.

128. On or about March 22, 2024, Zywave claimed to grant accommodations.

129. Zywave's purported accommodations were not effective.

130. Zywave did not provide the deadline and workload flexibility Plaintiff needed.

131. Zywave did not provide clear written workflows or instructions sufficient to address the confusing and changing processes.

132. Zywave continued holding Plaintiff to rigid and selectively enforced deadlines.

133. Zywave continued imposing heightened scrutiny and impossible standards.

134. Zywave continued assigning disproportionate, undesirable, and time-consuming work.

135. Zywave's purported accommodations did not enable Plaintiff to perform the essential functions of the job or enjoy equal terms and conditions of employment.

136. Zywave did not identify any undue hardship that would have prevented effective accommodations.

## I. FMLA Leave, continued retaliation, and termination

137. Plaintiff took FMLA leave beginning on or about March 27, 2024.

138. Plaintiff returned from FMLA leave on or about May 28, 2024.

139. After Plaintiff returned, Zywave continued its heightened scrutiny, refusal to accommodate, and retaliatory performance process.

140. Zywave terminated Plaintiff's employment on or about June 26, 2024.

141. Zywave terminated Plaintiff because of her age, because of disability, because she requested accommodations, because of her association with a person who has a disability, and because she opposed discrimination and retaliation.

142. Zywave's termination decision was also based on the same false and pretextual performance allegations that Zywave began compiling after Plaintiff requested accommodations and objected to unlawful conduct.

143. Plaintiff's termination was reasonably related to and grew out of the discrimination, failure-to-accommodate, and retaliation allegations raised in the EEOC charge and the EEOC proceedings.

144. Plaintiff has suffered lost wages, lost benefits, emotional distress, reputational harm, loss of career opportunities, and other damages.

## V. CLAIMS FOR RELIEF

### A. COUNT I – AGE DISCRIMINATION, ADEA, 29 U.S.C. § 623(a)

145. Plaintiff realleges paragraphs 1 through 144.

146. Plaintiff was over age 40 at all relevant times.

147. Plaintiff was qualified for her position and was meeting Zywave's legitimate expectations.

148. Zywave subjected Plaintiff to adverse employment actions and harmed the terms and conditions of her employment, including but not limited to demotion/reassignment to a materially inferior role, loss of duties and autonomy, increased and less desirable workload, heightened scrutiny, negative review, PIP, discipline, and termination.

149. Younger similarly situated employees were treated more favorably.

150. Younger employees were promoted or placed into more desirable roles while Plaintiff was moved into a lower-level role.

151. Younger employees received more autonomy, better opportunities, less scrutiny, lighter or more manageable workloads, and more favorable treatment regarding deadlines, errors, feedback, and discipline.

152. Zywave's stated reasons for its actions are false, inconsistent, exaggerated, selectively enforced, and pretextual.

153. Plaintiff's age was the but-for cause of Zywave's adverse actions against her, including her demotion/reassignment and termination. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).

17

154. Zywave violated the ADEA.

155. Plaintiff is entitled to all relief available under the ADEA, including back pay, front pay or reinstatement, liquidated damages for willful violation, equitable relief, interest, fees and costs where available, and all other appropriate relief.

## B. COUNT II – DISABILITY DISCRIMINATION, ADA, 42 U.S.C. § 12112(a)

156. Plaintiff realleges paragraphs 1 through 144.

157. Plaintiff is a qualified individual with disabilities under the ADA.

158. Plaintiff could perform the essential functions of her position with or without reasonable accommodation.

159. Zywave knew of Plaintiff's disabilities and disability-related limitations.

160. Zywave subjected Plaintiff to adverse employment actions because of disability, including heightened scrutiny, changed working conditions, denial of flexibility, negative review, PIP, discipline, and termination.

161. Zywave treated Plaintiff less favorably than similarly situated employees without disabilities.

162. Zywave's stated reasons for its actions were pretextual.

163. Plaintiff's disability was a cause of Zywave's adverse actions against her under the applicable ADA causation standard.

164. Zywave violated the ADA.

165. Plaintiff is entitled to all relief available under the ADA, including back pay, reinstatement or front pay, compensatory damages, punitive damages, equitable relief, interest, attorney's fees and costs where available, and all other appropriate relief.

18

## C. COUNT III – FAILURE TO ACCOMMODATE, ADA, 42 U.S.C. § 12112(b)(5)(A)

166. Plaintiff realleges paragraphs 1 through 144.

167. Plaintiff is a qualified individual with disabilities under the ADA.

168. Zywave knew of Plaintiff's disabilities and disability-related limitations.

169. Plaintiff requested reasonable accommodations, including but not limited to flexibility for medical appointments and procedures, flexibility regarding deadlines and workload, schedule flexibility, written instructions and workflows, additional time to learn new processes, and working conditions that allowed her to work effectively despite disability-related limitations.

170. Plaintiff requested accommodations on or about November 28, 2023, December 5, 2023, January 1, 2024, and on other dates in 2024.

171. Plaintiff's requested accommodations were reasonable.

172. Zywave failed to engage in a timely, good-faith interactive process after Plaintiff's November and December 2023 requests.

173. Zywave failed to provide effective accommodations.

174. Zywave did not demonstrate that Plaintiff's requested accommodations would impose an undue hardship.

175. Zywave's alleged March 2024 accommodations were ineffective because they did not meaningfully modify Plaintiff's workload, deadlines, workflows, instructions, scrutiny, or working conditions in a way that enabled equal employment opportunity.

176. Zywave violated the ADA by failing to reasonably accommodate Plaintiff.

177. Plaintiff is entitled to all relief available under the ADA.

## D. COUNT IV — RETALIATION, ADEA, 29 U.S.C. § 623(d), and ADA, 42 U.S.C. § 12203(a)

19

178. Plaintiff realleges paragraphs 1 through 144.

179. Plaintiff engaged in protected activity by requesting reasonable accommodations.

180. Plaintiff engaged in protected activity by opposing age discrimination, disability discrimination, failure to accommodate, retaliation, and other unlawful employment practices.

181. Plaintiff engaged in protected activity by filing an EEOC charge and participating in the EEOC process.

182. Zywave knew of Plaintiff's protected activity.

183. After Plaintiff's protected activity, Zywave subjected Plaintiff to materially adverse actions, including but not limited to retroactive performance review, false accusations, negative rating, PIP, final warning, heightened scrutiny, denial of effective accommodations, increased and undesirable workload, continued discipline, and termination.

184. These actions would dissuade a reasonable employee from requesting accommodations, filing an EEOC charge, or opposing unlawful discrimination.

185. The temporal proximity between Plaintiff's protected activity and Zywave's adverse actions supports an inference of causation.

186. The escalating pattern of adverse treatment after Plaintiff's accommodation requests and objections supports an inference of causation.

187. Zywave's false, shifting, inconsistent, and selectively enforced explanations support an inference of retaliatory intent.

188. Zywave retaliated against Plaintiff in violation of the ADEA and ADA.

189. Plaintiff is entitled to all relief available under the ADEA and ADA.

20

## E. COUNT V — ASSOCIATIONAL DISCRIMINATION, ADA, 42 U.S.C. § 12112(b)(4)

190. Plaintiff realleges paragraphs 1 through 144.

191. The ADA prohibits excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the employee has a relationship or association.

192. On or about December 5, 2023, Plaintiff informed Zywave that a close family member had suffered a stroke and required care from Plaintiff and her immediate family.

193. Zywave was aware of Plaintiff's association with an individual with a disability.

194. Zywave thereafter treated Plaintiff as a burden, intensified scrutiny, denied flexibility, and took adverse actions against her.

195. Zywave's actions were motivated, in whole or in part, by Plaintiff's known association with a disabled family member, in violation of 42 U.S.C. § 12112(b)(4).

196. Plaintiff is entitled to all relief available under the ADA.

## VI. ANTICIPATED DEFENSES AND RESPONSIVE ALLEGATIONS

197. Zywave has asserted that Plaintiff was not demoted because her title, pay, and nominal duties remained the same. That defense fails because Plaintiff's actual job duties, reporting structure, autonomy, workload, prestige, review process, opportunities, and working conditions materially worsened.

198. Zywave has asserted that Plaintiff did not request accommodations in November or December 2023. That defense fails because Plaintiff informed Zywave of medical conditions, disability-related limitations, medical procedures, and the need for flexibility regarding time off, deadlines, and workload.

Case 2:26-cv-01063-SCD    Filed 06/12/26    Page 21 of 25    Document 1

199. Zywave has asserted that any later accommodation request was not supported until March 2024. That defense fails because Zywave already had notice sufficient to trigger the interactive process and because Zywave failed to engage in good faith when Plaintiff first requested accommodations.

200. Zywave has asserted that it granted accommodations in March 2024. That defense fails because the alleged accommodations were ineffective and did not address Plaintiff's actual limitations or the changed working conditions that prevented equal employment opportunity.

201. Zywave has asserted that Plaintiff had longstanding poor performance. That defense fails because Plaintiff's prior record was positive, Zywave did not contemporaneously document or communicate the alleged deficiencies, and several of Zywave's specific accusations are false.

202. Zywave has asserted that Plaintiff's prior manager merely overlooked poor performance. That defense fails because Plaintiff's prior manager provided accommodations that enabled successful performance, and Zywave cannot recast years of satisfactory and successful work as hidden poor performance after Plaintiff requests accommodations and opposes discrimination.

203. Zywave has asserted that Plaintiff's PIP was not adverse. That defense fails because the PIP was disciplinary, imposed heightened and selectively enforced standards, threatened Plaintiff's employment, changed her working conditions, formed part of the path to termination, and would dissuade a reasonable employee from engaging in protected activity.

204. Zywave has asserted that Plaintiff committed "time theft." That defense is false and pretextual. Plaintiff was salaried, worked at least the required hours, often worked more than 40 hours, remained available during core hours, and had previously been permitted flexibility as to when her work was performed.

205. Zywave has asserted that Plaintiff was terminated for legitimate performance reasons. That defense fails because the alleged performance reasons were manufactured, exaggerated, contradicted by evidence, selectively enforced, and temporally connected to Plaintiff's protected activity.

206. Zywave has asserted that Plaintiff cannot identify similarly situated comparators. That defense fails because younger employees and employees who had not requested accommodations were treated more favorably with respect to promotions, workload, scrutiny, deadlines, review standards, errors, discipline, autonomy, and opportunities.

207. Zywave has asserted or may assert that Plaintiff failed to follow formal accommodation procedures. That defense fails because the ADA does not require an employee to use magic words or a particular form before the employer's obligation to engage in the interactive process is triggered.

208. Zywave has asserted or may assert after-acquired or alternative justifications. Plaintiff alleges that any such justifications are pretextual, were not honestly relied on at the time, or do not limit liability except as allowed by law.

## VII. DAMAGES

209. As a direct and proximate result of Zywave's unlawful actions, Plaintiff has suffered damages.

210. Plaintiff has suffered lost wages, lost benefits, loss of earning capacity, and other economic losses.

211. Plaintiff has suffered emotional distress, humiliation, anxiety, reputational harm, loss of professional opportunities, and other non-economic damages.

212. Zywave's conduct was willful under the ADEA because Zywave knew or showed reckless disregard for whether its conduct violated federal law.

213. Zywave acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA, entitling Plaintiff to punitive damages.

214. Plaintiff is entitled to pre-judgment interest, post-judgment interest, costs, and all other relief allowed by law.

## VIII. RELIEF REQUESTED

215. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Zywave, Inc., and award the following relief:

  a. Declare that Zywave violated the ADEA and ADA;

  b. Award back pay, lost benefits, and all other lost compensation;

  c. Award reinstatement or front pay, as appropriate;

  d. Award liquidated damages under the ADEA;

  e. Award compensatory damages under the ADA;

  f. Award punitive damages under the ADA;

  g. Award pre-judgment and post-judgment interest;

  h. Award reasonable attorney's fees and costs to the extent permitted by law;

24

i.  Order appropriate equitable relief, including expungement or correction of

negative employment records, neutral reference relief, policy changes, training,

and anti-retaliation protections;

j.  Award any other relief the Court deems just and proper.

## IX. JURY DEMAND

216.  Plaintiff demands a trial by jury on all claims so triable.

Dated: June 12, 2026.

Respectfully submitted,

*Carrie May Poniewaz*

Carrie May Poniewaz
3224 N Shepard Ave
Milwaukee, WI 53211
Plaintiff Pro Se
Telephone: 414-379-8974
Email: CM@CMinCourt.com